IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 6 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

MOLLY SOBEL, )
)
    Plaintiff, )
)
v. )
)
INSTITUTE FOR SHIPBOARD )
EDUCATION d/b/a SEMESTER AT SEA, )
et al., )
)
    Defendants. )

Civil Action No. 3:15CV00040

**MEMORANDUM OPINION**

Hon. Glen E. Conrad
Chief United States District Judge

    This personal injury action arises from a sexual assault that occurred while the plaintiff, Molly Sobel, was studying abroad through a program offered by the Institute for Shipboard Education ("ISE"). The case is presently before the court on ISE's renewed motion for summary judgment and Sobel's motion for leave to file an amended complaint. For the reasons that follow, ISE's motion will be granted and Sobel's motion will be denied. Additionally, Sobel's claims against Shailesh Tripathi, the alleged perpetrator of the sexual assault, will be dismissed without prejudice.

### Background

    The following facts from the summary judgment record are either undisputed or presented in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013).

    ISE is a nonprofit corporation based in Delaware, which has its principal place of business in Charlottesville, Virginia. ISE administers the Semester at Sea study abroad program, which offers students the opportunity to take college courses aboard a passenger cruise ship that travels internationally.

Sobel, a California resident, participated in the Semester at Sea Spring 2013 Voyage. In order to gain admission to the program, Sobel completed an online application in which she agreed to "accept as binding any and all conditions that normally apply to undergraduate admission to Semester at Sea, including those set forth in the Voyager's Handbook and the ticket contract . . . ." 2d Supp'l Decl. of Michael Zoll ("Zoll Decl.") ¶ 4, Docket No. 68-1. The referenced ticket contract (the "Ticket Contract") and the Voyager's Handbook were available for review on ISE's website through Sobel's MyVoyage page. Upon applying to attend the program, Sobel was given a password that allowed her to access those documents and other program materials. Every time that she logged in to her MyVoyage page, Sobel checked a box stating that she agreed to take electronic delivery of the Voyager's Handbook, the Ticket Contract, and other documentation contained therein. Sobel logged in to the website more than 100 times and had access to the Ticket Contract through the website for more than one year.

Before Sobel's Semester at Sea program began, she was provided a "Voyage Preparations" package and "Embarkation Information." Id. at ¶¶ 7, 9. The first page of both documents indicates that the "most important thing" that a student can do to prepare for her voyage is to read the Voyager's Handbook and the Ticket Contract, which "contain extremely important information." Id.

As is relevant in the instant action, the Voyager's Handbook emphasizes that ISE is committed to the "health and safety" of its students. Voyager's Handbook at § IX, Docket No. 49-2. In a section pertaining to "field trips," the Voyager's Handbook states that "ISE-sponsored field trips are provided by reliable operators who meet selection criteria, participate in performance evaluations, and have long-standing professional ties to the institute," and that "[t]hese tour operators arrange for safe and reliable transportation, select hotels that provide a

2

secure environment[,] and provide knowledgeable guides . . . ." Id. The Voyager's Handbook strongly discourages students from participating in field trips that are not sponsored by ISE, since they may not adhere to ISE's "stringent safety standards." Id. at § XI.

The Ticket Contract includes a number of provisions that affect the plaintiff's legal rights, including a limitation provision applicable to lawsuits for bodily injury or death. The first line of the Ticket Contract emphasizes that the "document is a contract," that "[a]ll of its provisions are important," and that particular attention should be given to certain sections, including the "time limitations to give notice of claims, file and serve suit (Section 15)." Ticket Contract at 1, Docket No. 26-2. Section 15 contains two limitation provisions, one applicable to claims for "bodily injury or death" and another applicable to "other claims." Id. at § 15. Section 15(a) provides that actions resulting from bodily injury or death must be filed "within 1 year from the date of the bodily injury or death." Id. at § 15(a). Section 15(b) states that lawsuits resulting from "any damage, delay, or other loss of any nature or cause whatsoever other than for death or bodily injury" must be "filed within 6 months from the date the voyage terminated." Id. at § 15(b).

Sobel and other students participating in the 2013 Spring Voyage departed on a passenger ship from San Diego, California on January 9, 2013. On March 6, 2013, the ship docked in Cochin, India. Prior to docking, Sobel purchased a ticket for an ISE-sponsored field trip to Agra and Varanasi, which was organized and provided by Abercrombie & Kent India. Shailesh Tripathi, an employee of Abercrombie & Kent, served as the tour guide for Sobel's group. On the night of March 9, 2013, Sobel went to Tripathi's hotel room for a palm reading. Tripathi subsequently grabbed Sobel's genitals and forced her to perform a sexual act on him. He finally released Sobel from his hotel room around 1:00 a.m. on March 10, 2013.

3

## Procedural History

Nearly two years later, on March 6, 2015, Sobel filed the instant action against ISE, Abercrombie & Kent USA LLC, Abercrombie & Kent Destination Management, and Tripathi in the United States District Court for the Northern District of California, asserting claims of negligence, negligent hiring and supervision, sexual battery, intentional misrepresentation, negligent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Sobel voluntarily dismissed her claims against the Abercrombie & Kent defendants on June 5, 2015. On June 8, 2015, ISE moved to transfer the case to a federal district court in Virginia, based on a forum selection clause in the Ticket Contract. Without challenging the validity of the Ticket Contract or its application to the complaint, Sobel filed a statement of non-opposition to ISE's motion, and requested that the case be transferred to the Western District of Virginia. The case was transferred to this court on August 4, 2015.

On August 17, 2015, ISE moved for summary judgment on the basis that the plaintiff's claims are barred by the one-year limitation provision in the Ticket Contract. The court held a hearing on the motion on December 21, 2015. Following the hearing, the court denied the motion without prejudice as premature, and gave the parties 90 days in which to conduct discovery on the issue of the enforceability of the limitation provision. The court noted that ISE could renew its motion for summary judgment upon the completion of such discovery.

ISE filed a renewed motion for summary judgment on June 13, 2016. On September 15, 2016, the court held a hearing on that motion, as well as Sobel's motion to compel ISE to produce a representative for a Rule 30(b)(6) deposition. In a subsequent order entered on September 20, 2016, the court permitted Sobel to take a Rule 30(b)(6) deposition of ISE, and took ISE's renewed motion for summary judgment under advisement pending the conduct of the deposition. The

4

order provided that, "[f]ollowing the deposition, plaintiff shall have (30) days in which to file a supplemental response to ISE's motion and, if necessary, a motion to amend the complaint." Docket No. 72.

Sobel did not comply with the court's order. Because she took the Rule 30(b)(6) deposition on October 12, 2016, Sobel had until November 11, 2016 to file a supplemental response to ISE's motion for summary judgment or a motion to amend her complaint. Sobel did not file anything on or before that date. Consequently on December 21, 2016, ISE filed a notice requesting that the court rule on its renewed motion for summary judgment.

On December 22, 2016, more than 60 days after the Rule 30(b)(6) deposition, Sobel filed a motion for extension of time in which to seek leave to file an amended complaint. Several days later, Sobel filed a motion for leave to amend, along with a proposed amended complaint. To date, she has not filed a supplemental response to ISE's renewed motion for summary judgment.

## Standards of Review

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (finding summary judgment appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case"). In deciding whether to grant a summary judgment motion, the court must view the record in the light most favorable to the non-moving party, and draw all reasonable inferences in her favor. Anderson, 477 U.S. at 255; Libertarian Party of Va, 718 F.3d at 312.

5

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend her pleading with leave of court, which shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Nevertheless, a court may deny a request for leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Balas v. Huntington Ingalls Indus., 711 F.3d 401, 409 (4th Cir. 2013) (citation and internal quotation marks omitted).

## Discussion

### I. Claims against Tripathi

Before discussing the pending motions, the court will first address the claims against Shailesh Tripathi, the alleged perpetrator of the sexual assault, who resides in India. See Compl. ¶ 19, Docket No. 1. The record reveals that Sobel failed to properly effect service on this defendant. Service of process upon an individual in a foreign country is governed by Rule 4(f) of the Federal Rules of Civil Procedure. Pursuant to Rule 4(f)(1), an individual may be served outside of the United States "by any internationally agreed means of service . . . , such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" ("the Hague Convention"). Rule 4(f)(3) further provides for service "by any other means" ordered by the court, provided that the alternative means of service are "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998).

In this case, Sobel filed a proof of service on May 29, 2015, which indicated that her counsel served Shailesh Tripathi via "certified mail, return receipt requested." Docket No. 21. The accompanying summons listed Tripathi's address in India, which is a signatory to the Hague

6

Convention referenced in Rule 4(f)(1). See Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1296 (Fed. Cir. 2012) ("India became a signatory to the Hague Convention, effective August 1, 2007."). The Hague Convention requires signatory countries to establish a "central authority" for receiving and processing requests for service of documents from other countries. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698 (1988). Service through a country's central authority is the principal means of service under the Hague Convention. Id. Although Article 10 of the Hague Convention provides for alternative methods of service, such as "by postal channels, directly to persons abroad," the Article permits a "State of destination" to decide whether it will object to the methods described. Hague Convention art. 10, 20 U.S.T. 361, 363. It is clear from existing case law that India has objected to the alternative means of service identified in Article 10. See, e.g., Merial Ltd., 681 F.3d at 1296 ("In [becoming a signatory to the Hague Convention], India prohibited service through channels including mail and private process servers and instead required foreign plaintiffs to effect service through the Central Authority of India."); Tuckerbrook Alternative Invs., LP v. Banerjee, 754 F. Supp. 2d 177, 181 (D. Mass. 2010) ("Because India opposes the methods of service proscribed in Article 10, certified mail was not a sufficient method of service in this case."). Accordingly, Sobel's use of certified mail to complete service of process on Tripathi is ineffective under the Hague Convention and Rule 4(f)(1).

Ordinarily, civil actions are subject to dismissal without prejudice unless service is made within 90 days after a complaint is filed. See Fed. R. Civ. P. 4(m).[1] Although Rule 4(m) "does not apply to service in a foreign country under Rule 4(f)," Id., this does not mean that the time allowed for foreign service is unlimited. Instead, "Rule 4(f) authorizes a without-prejudice

---

[1] Rule 4(m) was amended on December 1, 2015 to require service within 90 days of the filing of a complaint rather than 120 days.

7

dismissal when the court determines in its discretion that the plaintiff has not demonstrated reasonable diligence in attempting service." Lozano v. Bosdet, 693 F.3d 485, 489 (5th Cir. 2012); see also Nylok Corp. v. Fastener World Inc., 396 F.3d 805, 807 (7th Cir. 2005) ("Because district courts need to be able to control their dockets, we have stated that the amount of time for foreign service is not unlimited. If, for example, a plaintiff made no attempt to begin the process of foreign service within 120 days, it might be proper for a court to dismiss the claim.").

Here, almost two years have elapsed since Sobel filed her complaint, and there is no indication that she has attempted to serve Tripathi in the manner required by Rule 4(f). Any perceived "difficulty in perfecting service on a foreign defendant is no excuse for plaintiff['s] failure to make a proper attempt to do so." Veliz v. Rimax Contrs., Inc., No. 15-6339, 2016 U.S. Dist. LEXIS 56630, at *8 (E.D. La. Apr. 28, 2016). Because the plaintiff has not demonstrated reasonable diligence in obtaining proper service on Tripathi, the claims against him will be dismissed without prejudice.[2]

## II.    ISE's Motion for Summary Judgment

ISE has renewed its motion for summary judgment on the basis that the action was not timely filed. Relying on the limitation provision in the Ticket Contract, ISE argues that Sobel was required to file suit within one year of the date of her alleged injuries and that her failure to do so is dispositive of the claims asserted against ISE. For the following reasons, the court agrees.

### A.    Validity of the One-Year Limitation Provision

A ticket contract for an ocean voyage is a maritime contract governed by federal maritime law. See Petrey v. Cunard Line, No. 93-1640, 1993 U.S. App. LEXIS 29733, at *4 (4th Cir. Nov.

---

[2] The court notes that even if Tripathi had been properly served with process, the claims against him would be subject to dismissal for failure to prosecute, since Sobel never moved for entry of default or took any other affirmative steps to address his failure to answer. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (recognizing that federal courts "may act sua sponte to dismiss a suit for failure to prosecute").

8

16, 1993) (citing Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905, 909 (3d Cir. 1988)); see also Wallis ex rel. Wallis v. Princess Cruises, Inc., 306 F.3d 827, 834 (9th Cir. 2002) (citing Milanovich v. Costa Crociere, S.p.A., 954 F.2d 763, 766 (D.C. Cir. 1992)). By statute, ticket contracts may contain a time limitation for filing suit for personal injury or death, provided that the limitation period is not "less than one year after the date of the injury or death." See 46 U.S.C. § 30508(b)(2). Under federal maritime law, a limitation provision is valid and enforceable as long as (1) the provision was reasonably communicated to the plaintiff, and (2) it is fundamentally fair. See Petrey, 1993 U.S. App. LEXIS 29733, at *5 (citing Dempsey v. Norwegian Cruise Line, 972 F.2d 998, 999 (9th Cir. 1992)); see also Oltman v. Holland Am. Line-USA, Inc., 538 F.3d 1271, 1277 (9th Cir. 2008) (applying the "fundamental fairness" test utilized by the Supreme Court in Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)).

### 1. Reasonable Communicativeness Test

Courts employ a two-pronged "reasonable communicativeness" test to "determine under federal common law and maritime law when the passenger of a common carrier is contractually bound by the fine print of a passenger ticket." Wallis, 306 F.3d at 835. The first prong "focuses on the physical characteristics of the ticket," while the second prong requires an evaluation of "the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract." Id. at 835-36 (citations and internal quotation marks omitted). The issue of whether a provision in a ticket contract was reasonably communicated to a passenger is a question of law for the court. Id. at 836. Accordingly, it is "suitable for disposition by summary judgment." Marek v. Marpan Two, Inc., 817 F.2d 242, 244 (3d Cir. 1987) (citation and internal quotation marks omitted).

9

Having reviewed the Ticket Contract at issue, the court concludes that it sufficiently alerts passengers to the existence of important terms affecting their legal rights. The title of the document, "TICKET CONTRACT TERM AND CONDITIONS," is typed in bold, capital letters, and ISE is identified in the top right corner of the document. Ticket Contract at 1. The first paragraph states that "[t]his document is a contract," and that "[a]ll of its provisions are important." Id. It directs passengers to "[p]lease pay particular attention" to certain limitations, including the "time limitations to give notice of claims, file and serve suit (Section 15)." The Ticket Contract then defines a number of terms, including the terms "Carrier" and "Semester at Sea." The definitions make clear that ISE is entitled to all of the rights and benefits of the Carrier as defined therein. See id. ("The term 'Semester at Sea' refers to the semester programs sponsored by the Institute for Shipboard Education, Inc. ("ISE"), a non-profit Delaware corporation, which shall be deemed to have all the rights and benefits of the 'Carrier' as defined herein under this Ticket Contract or otherwise by law, international convention or treaty, and the term 'Carrier' as used herein shall be deemed, where appropriate, to include Semester at Sea and the Institute for Shipboard Education.").

Section 15 of Ticket Contract, to which passengers are particularly directed, is titled "TIME LIMITATION; NOTICE BY YOU OF CLAIMS AND SUITS; PLACE OF SUIT." That section clearly states that "[n]o lawsuit shall be maintainable against [the Carrier, the Master, Officers, crew members, and agents of the Ship] for bodily injury or death unless . . . a lawsuit on such claim is filed within 1 year from the date of the bodily injury or death." Id. at § 15(a). Section 15 further provides that "no lawsuit shall be maintainable against [the Carrier, the Master, Officers, crew members, and agents of the Ship]" for claims "other than for death or bodily injury" unless the lawsuit is "filed within 6 months from the date the voyage terminated." Id. at § 15(b).

Based on the physical characteristics of the Ticket Contract, the court believes that the limitation provision is sufficiently clear and conspicuous to satisfy the first prong of the "reasonable communicativeness" test. See Wallis, 306 F.3d at 835; Oltman, 538 F.3d at 1276.

With respect to Sobel's "purchase and subsequent retention of the ticket/contract," Wallis, 306 F.3d at 836, the record reveals that Sobel, upon applying to attend the Semester at Sea program, agreed to "accept as binding any and all conditions that normally apply to undergraduate admission to Semester at Sea, including those set forth in the Voyager's Handbook and the ticket contract (available for review through your MyVoyage page)." Zoll Decl. at ¶ 4. Sobel was given a password that allowed her to log in and access program materials on ISE's website, including the Ticket Contract. Sobel accessed the website containing the Ticket Contract for the first time on January 19, 2012. She then accessed the website more than 100 times over the course of the next year. Each time that she logged in, Sobel was required to check a box stating that she agreed to accept electronic delivery of certain documents, including the Ticket Contract. Additionally, before embarking, Sobel was advised in writing on multiple occasions that "the most important thing" she could do to prepare for her voyage was to "read the Voyagers Handbook and the Ticket Contract," which "contain extremely important information." Id. at ¶¶ 7, 9. The court is convinced that these methods of communication sufficiently directed Sobel's attention to the terms and conditions of the Ticket Contract. See, e.g., Starkey v. G Adventures, Inc., 796 F.3d 193, 197 (2d Cir. 2015) (holding that contractual terms were reasonably communicated when a tour company sent the plaintiff three emails directing her attention to the terms by means of a hyperlink and language advising her to click on the hyperlink). Regardless of whether Sobel actually read the terms and conditions before departing, she clearly had the "ability to become meaningfully informed," which is sufficient to satisfy the second prong of the "reasonable

11

communicativeness" test. Wallis, 306 F.3d at 836; see also Racca v. Celebrity Cruises, Inc., 376 F. App'x 929, 931 (11th Cir. 2010) ("A passenger's failure to actually read the contractual provision at issue does not preclude his being bound. The question is whether Racca received adequate notice of the limitations provision."). Accordingly, the court concludes that the limitation provision in the Ticket Contract was reasonably communicated to Sobel.

## 2. Fundamental Fairness

Cruise ticket contracts are also "subject to judicial scrutiny for fundamental fairness." Shute, 499 U.S. at 595. "Courts focus on whether the clause was included because of 'bad-faith motive' and whether the clause was 'a means of discouraging cruise passengers from pursuing legitimate claims.'" Oltman, 538 F.3d at 1277 (quoting Shute, 499 U.S. at 595). In this case, there is no evidence that ISE included the limitation provision out of bad faith or that the provision was intended to discourage legitimate claims. Indeed, by enacting 46 U.S.C. § 30508, "Congress has . . . indicated that [ticket] contracts may legally shorten the limitations period to one year." Dempsey, 972 F.2d at 999 (citing 46 U.S.C. § 183b, which was recodified as 46 U.S.C. § 30508).

In determining whether the one-year limitation provision is fundamentally fair, the court must also consider whether ISE obtained Sobel's "accession to the . . . clause by fraud or overreaching." Shute, 499 U.S. at 595. While Sobel's complaint includes claims for intentional and negligent misrepresentation against ISE, there is no allegation of fraud in the inducement of the limitation provision itself. See Liles v. Ginn-La West End, Inc., 631 F.3d 1242, 1248 n.11 (11th Cir. 2011) ("To be unenforceable, the inclusion of the . . . clause itself must be the product of fraud . . . ."); Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 960 (10th Cir. 1992) ("Riley never pleaded that the specific . . . provisions at issue were obtained by fraud. A plaintiff seeking to avoid a . . . provision on a fraud theory must . . . plead fraud going to the specific

12

provision."). In the absence of any evidence that the inclusion of the limitation provision in the Ticket Contract was the product of fraud or overreaching, the court concludes that the provision is fundamentally fair and enforceable.

**B.**     <u>**Application to the Plaintiff's Claims**</u>

Having concluded that the one-year limitation provision is valid and enforceable, the court must now determine whether the provision applies to the claims asserted in Sobel's complaint. Despite Sobel's arguments to the contrary, the court concludes that the provision is applicable, and that ISE is entitled to summary judgment.

In response to ISE's original motion for summary judgment, Sobel offered a number of arguments, both in her brief in opposition and in open court. Sobel first argued that the limitation provision does not apply to the injuries that she sustained on the field trip, since she was not a "passenger" of the ship at the time of the injuries. To support this argument, Sobel directed the court's attention to <u>Rams v. Royal Carribean Cruise Lines, Inc.</u>, 17 F.3d 11, 12-13 (1st Cir. 1994), in which the United States Court of Appeals for the First Circuit held that a ticket contract, which defined "passenger" as "all persons travelling under this ticket," did not apply to injuries a passenger sustained on shore at a resort. The court finds Sobel's reliance on <u>Rams</u> unpersuasive. Unlike the contract in <u>Rams</u>, the Ticket Contract's definition of "passenger" is not so limited. Instead, the term "passenger" is defined to include "the persons purchasing or accepting this Ticket Contract, or anyone who uses it to board the Ship or otherwise." Ticket Contract at 1. Because Sobel "does not dispute that she purchased or used" the Ticket Contract, "she is a 'passenger,' subject to the terms of the . . . contract." <u>Konikoff v. Princess Cruises, Inc.</u>, No. 1999-224, 2001 U.S. Dist. LEXIS 14034, at *4 (D.V.I. Aug. 13, 2001) (rejecting the plaintiff's argument that her on-shore injury was not subject to a limitation provision since she was not a "passenger" at the

time of the injury); see also Lano v. Carnival Corp., 621 F. App'x 373, 374 (9th Cir. 2015) ("Even if we found the reasoning in Rams v. Royal Carribean Cruise Lines, Inc. to be persuasive, the contract at issue in that case applied only to 'persons travelling under this ticket.' Because the Passage Contract does not contain such language, Rams is not applicable here.") (citation omitted).

Moreover, any doubt that the limitation provision applies to on-shore injuries is resolved by reference to Section 17 of the Ticket Contract. While that section attempts to limit ISE's liability for on-shore activities, it does not limit the scope of the one-year limitation provision. Instead, it provides that "the remaining terms of this Ticket Contract shall govern the rights and liabilities of the Carrier and the Passenger with respect to [selling tickets (including coupons or vouchers) or otherwise making arrangements for shore excursions, including Practica and/or Field Programs, tours, land, air, or local water transportation or shoreside accommodations and meals]." Based on the plain language of the Ticket Contract, the court concludes that the limitation provision applies to injuries suffered during the course of a field trip or shore excursion, to the extent that the injured passenger seeks to hold ISE liable for such injuries.[3]  See Bennion v. Clipper Cruise Line, No. 95-35089, 1996 U.S. App. LEXIS 11401, at *7 (9th Cir. 1996) ("We conclude . . . that the contract language on Clipper's ticket contract is more inclusive than that in

_____

[3]  To the extent that Sobel suggests that ISE is not a "Carrier" for purposes of the limitation provision, such argument is without merit. As discussed above, the first page of the Ticket Contract expressly provides that ISE "shall be deemed to have all the rights and benefits of the 'Carrier' as defined herein," and that "the term 'Carrier' . . . shall be deemed, where appropriate, to include Semester at Sea and the Institute for Shipboard Education." Ticket Contract at 1. Under maritime law, contract terms are given their ordinary meaning. Breaux v. Halliburton Energy Servs., 562 F.3d 358, 364 (5th Cir. 2008). The ordinary meaning of this provision is that ISE is entitled to the rights and benefits set forth in the Ticket Contract, such as the limitation provision and the forum selection clause. While the inclusion of ISE in the term "Carrier" may not be appropriate in all of the provisions of the Ticket Contract, such as those that refer to the Carrier and ISE in the same sentence, nothing in the Ticket Contract suggests that ISE is not entitled to enforce the one-year limitation provision in Section 15.

14

Rams. It covers injuries suffered by Clipper's passengers while engaged in on-shore activities with Clipper's service providers, to the extent that Clipper is sued for them.").

Along the same lines, the court also rejects Sobel's argument that the terms of the Ticket Contract are inapplicable to her on-shore injuries, since the field trip was purchased under a "separate contract." A subsequent contract is only relevant to the extent that it was intended to replace or extinguish the first contract. See, e.g., Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 367-68 (4th Cir. 2012) (discussing the elements of a contractual novation). Here, there is no evidence that the parties entered into a new, stand-alone contract that extinguished the provisions of the Ticket Contract. To the contrary, the Ticket Contract explicitly anticipates that passengers will purchase "Field Programs" and other shore excursions, which are not included in the tuition for the Semester at Sea program. Ticket Contract at 1. Moreover, as discussed above, Section 17 of the Ticket Contract expressly provides that the terms of the Ticket Contract shall govern the rights and liabilities of ISE with respect to its involvement in making arrangements for the Field Programs and other shore excursions. Accordingly, there is no merit to Sobel's argument that her agreement to purchase the field trip to Agra and Varanasi superseded the terms of the Ticket Contract or otherwise modified it so as to negate the applicability of the limitation provision. Id.; see also Konikoff, 2001 U.S. Dist. LEXIS 14034, at *5 ("As a party covered at all relevant times by the passage contract, the plaintiff is bound by its terms, one of which being that she must file her claim within the valid limitations period. The plaintiff's argument that her claim does not in fact 'arise' from the passage contract but instead arises out of [another] contract does not render the passage contract inapplicable to her claim for that other contract's breach, a claim brought necessarily in her capacity as a passenger.").

15

Finally, the court must address the issue of whether the one-year limitation provision applies to claims that are based on representations made by ISE before Sobel departed on the cruise, such as Sobel's claim that ISE falsely represented in the Voyager's Handbook that she would be safe on the field trips or shore excursions that ISE personally selected and sponsored. Upon review of the terms of the Ticket Contract and applicable case law, the court concludes that it does. In each of her claims, Sobel seeks redress for physical and emotional injuries suffered as a result of the sexual assault on March 9-10, 2013. Section 15 of the Ticket Contract unequivocally requires that she bring any claim for bodily injury within one year of the date of the injury. The Ticket Contract does not differentiate between various causes of action for bodily injury; instead, it distinguishes claims for bodily injury or death from other claims, the latter of which are subject to a shorter limitation provision. Moreover, the Ticket Contract does not limit the one-year limitation provision to injuries caused by acts or omissions that occurred after embarkation. Instead, the language is as broad as possible, extending to "[a]ny claim whatsoever for bodily injury or death." Ticket Contract at § 15(a).

Based on the plain language of the Ticket Contract, and consistent with existing case law, the court concludes that the one-year limitation provision applies to all of Sobel's claims against ISE, including those based on representations that were made before she departed on the cruise. See Licensed Practical Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc., 131 F. Supp. 2d 393, 411 (S.D.N.Y. 2000) (holding that the one-year limitation provision in a ticket contract applied to the plaintiff's claim that the cruise line breached its agreement and warranty to provide a safe and reasonable environment, and emphasizing that the provision did not limit its application based on the nature of the lawsuit); Boyles v. Cunard Line, Ltd., No. 93 Civ. 5472, 1994 U.S. Dist. LEXIS 21449, at *14 (S.D.N.Y. Jan. 12, 1994) (holding

16

that the limitation period in a passenger ticket contract applied to claims for fraud, which were based on representations made in the defendant's promotional brochures and newsletters); Fagan v. Nordic Prince, Inc., 1992 A.M.C. 2553, 2562 (D.N.J. 1992) (rejecting the plaintiff's argument that the contractual limitation provision did not apply to her misrepresentation claim and explaining that "the claim is still an action for personal injury, only the act allegedly causing the injury is now placed prior in time"); Mirra v. Holland America Line, 751 A.2d 138, 139-40 (N.J. Super. Ct. App. Div. 2000) (applying the limitation provision in a ticket contract to fraud claims based on pre-voyage misrepresentations regarding a cruise ship's accommodations). Because Sobel filed suit more than one year after her injuries occurred, her claims against ISE are barred by the limitation provision. Accordingly, the court will grant ISE's motion for summary judgment.

### III.     Sobel's Motion for Leave to File an Amended Complaint

On January 2, 2017, Sobel filed a motion for leave to file an amended complaint against Tripathi and ISE. While Rule 15 of the Federal Rules of Civil Procedure provides that the court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), amendments to the complaint should not be permitted when they would be futile. Balas, 711 F.3d at 409. "[L]eave to amend should be denied on the grounds of futility when the proposed amendment is clearly insufficient because of substantive or procedural considerations." Goewey v. United States, 886 F. Supp. 1268, 1284 (D.S.C. 1995) (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)). For the following reasons, Sobel's motion will be denied on the basis of futility.

#### A.     Claims against Tripathi

Sobel's motion for leave to amend will be denied as futile with respect to Tripathi, because she never served this defendant in the manner required by Rule 4(f) of the Federal Rules of Civil

Procedure. A plaintiff cannot cure defective service of her original complaint by filing an amended complaint against the same defendant over 650 days after she filed her original complaint. Otherwise, a plaintiff would be allowed to evade the requirements of Rule 4 and extend the time for service indefinitely. Bolden v. City of Topeka, 441 F.3d 1129, 1148 (10th Cir. 2006); see also Convergence Techs. (USA), LLC v. Microloops Corp., 711 F. Supp. 2d 626, 631 (E.D. Va. 2010) (noting that while the Fourth Circuit has not directly addressed the issue, "other courts have reasonably concluded that the filing of an amended complaint does not restart the . . . period [for service of process] except as to those defendants newly added in the amended complaint"). Accordingly, the motion to amend will be denied as futile with respect to the claims against Tripathi.

**B.     Claims against ISE**

The court also concludes that the proposed amendments would be futile with respect to ISE, because they do not cure the fact that her claims are barred by the one-year limitation provision in the Ticket Contract. See AC&R Insulation Co., Inc. v. Pa. Mfrs. Ass'n Ins. Co., 993 F. Supp. 2d 539, 551 (D. Md. 2014) (denying plaintiff's motion to amend as futile since the proposed amended complaint did "not alter the applicability of the statute of limitations"). Sobel's proposed amended complaint, like her original complaint, "seeks redress for physical and emotional injuries . . . resulting from a sexual battery" that occurred while Sobel was participating in ISE's Semester at Sea program. Proposed Am. Compl. ¶ 1. As discussed above, the Ticket Contract unequivocally requires that she bring "any claim whatsoever for bodily injury or death" within one year from the date of the injury. Because all of Sobel's claims seek redress for

18

physical and emotional injuries, they fit squarely within the one-year limitation provision in the Ticket Contract and are barred by that provision.[4]

Although Sobel argues that ISE's alleged misrepresentations did not become clear until she conducted the Rule 30(b)(6) deposition, this argument is without merit. In both the original and proposed amended complaints, Sobel alleges that ISE committed fraud by falsely representing that she would be safe on the field trip that ISE sponsored and selected. See, e.g., Compl. ¶ 57 ("ISE made a false representation of a material fact to Plaintiff by representing that she would be safe on the ISE selected and sponsored field trip to Agra and Varanasi."); Proposed Am. Compl. ¶ 38 ("Defendant ISE's representations, warranties and assurances of reasonable safety during shore excursions offered by it were false. . . ."). Assuming that the sexual assault occurred as she alleges, Sobel knew by March 10, 2013 that she was not safe on the field trip, and, thus, that any express or implied assurances of safety were false. Accordingly, even if Sobel could avail herself of the discovery rule that normally applies to causes of action that sound in fraud,[5] her claim for fraud against ISE would be untimely.[6]

---

[4] Had Sobel asserted claims "other than for death or bodily injury," she would have been required to file suit within six months from the date her voyage terminated. Ticket Contract at § 15(b).

[5] Sobel specifically cites to Virginia Code § 8.01-249, which provides that a cause of action for fraud accrues "when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered."

[6] While Sobel may have learned additional facts during discovery, the law does not require that a plaintiff have actual knowledge of each and every supporting fact before a cause of action accrues. See, e.g., Hamilton Materials Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206-07 (9th Cir. 2007) ("Appellant argues that its fraud claim did not accrue until a deposition in 2003, when it learned of Appellees' specific intention to deceive their customers regarding the health hazards of Calidria. . . . . [However], it is not necessary that Hamilton had notice of Appellees' specific intention to deceive before the fraud action accrued. All that is relevant is that a reasonable person . . . would have been on notice of a potential misrepresentation."); Epstein v. C.R. Bard, Inc., 460 F.3d 183, 188 (1st Cir. 2006) ("The discovery rule does not require that a plaintiff know the specific details pertaining to an alleged harm, but instead it imposes a duty to investigate on a plaintiff who has cause for concern. Critically, knowledge of every fact necessary to prevail on the claim is not required to put the plaintiff on inquiry notice and trigger the accrual period.") (citations and internal quotation marks omitted).

19

In sum, each of Sobel's causes of action accrued on March 10, 2013, and she was required by the Ticket Contract to file suit within one year from that date. Having failed to do so, her claims against ISE, both in the original complaint and the proposed amended complaint, are time-barred. Because Sobel's proposed amendments do not cure the fact that her claims against ISE are untimely, her motion for leave to amend will be denied as futile with respect to this defendant.[7]

## Conclusion

For the reasons stated, ISE's renewed motion for summary judgment will be granted and Sobel's motion for leave to file an amended complaint will be denied.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 26th day of January, 2017.

_____
Chief United States District Judge

---

[7] Having reached this decision, Sobel's motion for an extension of time within which to file her motion to amend will be dismissed as moot.